# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br>vs.<br>RAFAEL MACIAS-ENCINAS (3),<br><br>　　　　　　　　　　Defendant. | CASE NO. 06-CR-01708-H<br><br>ORDER DENYING MOTION TO SUPPRESS EVIDENCE |

On July 27, 2006, the United States filed a two-count Indictment charging Defendant Rafael Macias-Encinas ("Defendant" or "Macias-Encinas") and other associates with conspiring to distribute more than 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and with possession with intent to distribute more than 100 kilograms of marijuana, in violation of 21 U.S.C. § 841 (a)(1). (Doc. No. 16.) On August 28, 2006, Macias-Encinas moved to suppress statements and evidence due to an illegal stop, an illegal arrest, and an illegal search. (Doc. No. 34.) On March 26, 2007, the Court denied Defendant's motions to suppress. (Doc. No. 94.) On April 12, 2007, Defendant entered a conditional plea of guilty to Count 2 of the indictment, reserving his right to appeal the Court's denial of his motions to suppress. (Doc. No. 107.)

On August 19, 2008, the Ninth Circuit panel affirmed the Court's finding that reasonable suspicion supported the stop of Macias-Encinas and that probable cause existed to arrest him after the officer's discovered the marijuana, but remanded the case to this Court, "to

conduct a hearing that will enable it to determine whether the officer's diligently pursued their investigation and whether the delay was reasonable under the circumstances." United States v. Macias-Encinas, No. 07-50353 (9th Cir. Aug. 19, 2008).

For the remand, Stewart Young appeared on behalf of the United States and Shaun Khojayan appeared on behalf of Macias-Encinas. The Court held a hearing on January 16, 2009, ordered the parties to submit briefing summarizing their positions, and continued the hearing to April 6, 2009. (Doc. Nos. 138-39.) On March 1, 2009, the United States filed a supplemental memorandum regarding the reasonableness of the detention and delay. (Doc. No. 144.) Defendant filed a response in opposition on March 16, 2009 and an amended response in opposition on March 17, 2009. (Doc. Nos. 145-46.) On March 23, 2009, the United States filed a reply. (Doc. No. 147.) On April 2, 2009, Defendant filed additional briefing. (Doc. No. 148.) The Court continued the hearing on April 6, 2009 to July 6, 2009 in order to give the United States an opportunity to respond to Defendant's additional briefing. The United States filed its supplemental brief on April 15, 2009. (Doc. No. 150.)

On May 22, 2009, the Court requested the parties to submit further supplemental briefing, specifically requesting the parties to brief whether all discovery matters were resolved. (Doc. No. 151.) Defendant filed his supplemental briefing on June 1, 2009, and requested discovery on the availability of narcotic detector dogs at the Calexico East and Andrade Ports of Entry on July 15, 2006. (Doc. No. 152.) On June 22, 2009, the Government filed its response to Defendant's supplemental briefing. (Doc. No. 153.)

On July 6, 2009, the Court held a hearing and granted Defendant's request for discovery on the available narcotic detector dogs at the Calexico East and Andrade Ports of Entry on the date of the arrest. (Doc. No. 154.) The Court also continued the hearing to August 31, 2009, in light of the discovery ordered.

On August 24, 2009, the United States responded to Defendant's request for discovery

1  on the available narcotic detector dogs at the Ports of Entry.[1]  (Doc. No. 157.)  The Court held
2  a hearing on August 31, 2009.  At the hearing, the Court took the motion to suppress under
3  submission and allowed the parties to file supplemental briefing.  (Doc. No. 158.)  On
4  September 8, 2009, the United States filed supplemental briefing on the temperature at
5  Imperial airport in the late afternoon and evening on July 15, 2006.  (Doc. No. 159.)
6  Defendant filed his supplemental briefing on September 15, 2009.  (Doc. No. 160.)

7       After due consideration, the Court concludes that the officers diligently pursued their
8  investigation and the detention of Macias-Encinas was reasonable under the unique
9  circumstances of the case.  Accordingly, the Court denies the motion to suppress statements
10 and evidence.

**Background**

12      On July 15, 2006 at around 6:00 p.m., border patrol agents observed three pickup trucks
13 with trailers in the Imperial San Dunes near the Buttercup Campground, an area known by the
14 United States Border Patrol to be a smuggling corridor for illegal aliens and drugs.  During
15 their surveillance, the agents observed a sand rail (a sand dune riding vehicle), mule ATVs and
16 a single ATV being unloaded from the trailers and driven in the sand dunes.  These vehicles
17 were then loaded into the trailers and driven out of the campground and onto Interstate 8.  The
18 border patrol agents stopped the three pickups separately on Interstate 8, with the easternmost
19 vehicles stopped 10 miles from the Buttercup Campground.  Once stopped, Agent Rios asked
20 Macias-Encinas and the driver of the vehicle, Ortiz, about their immigration status, requested
21 to see each person's driver's license, and inspected the papers to the pickup.  Another border
22 patrol agent meanwhile circled behind the pickup and inspected it.  Agent Rios asked Ortiz if
23 he could search the vehicle, and Ortiz said no.  Agent Rios then ordered Macias-Encinas and
24 Ortiz out of the vehicle, directed them to place their hands behind their backs, and to sit down
25 on the dirt side of the road.  About forty-five minutes after being stopped, a K-9 dog unit

---

[1] In response to a discovery request from the defense and the Court's order, the United States submitted the affidavits of Billy Whitford, Port Director of Calexico; Ray Nagy, Port Director of Andrade; and Troy Matthews, Border Patrol K-9 Supervisor, Customs and Border Protection Counsel, Department of Homeland Security on the availability of dogs at the Ports of Entry on July 15, 2006 and on procedures for inter-agency dog requests.  (Doc. No. 157.)

1  arrived. An agent guided the dog to the rear of the pickup, to which the dog alerted. The
2  agents discovered 285 pounds of marijuana in the vehicle.

3        Following a remand from the Ninth Circuit, the Court held an evidentiary hearing on
4  January 16, 2009 on the circumstances surrounding the forty-five minute delay in procuring
5  the Narcotic Detector Dog ("NDD"). Border Patrol Agent Joseph Scariano testified regarding
6  the events of July 15, 2006. Agent Scariano testified that the Buttercup Campground area is
7  approximately 160-170 miles east of metropolitan San Diego and approximately 40 miles east
8  of El Centro. (Tr. 6:12-25.) On July 15, 2006, Agent Scariano participated in the surveillance
9  and detention of Macias-Encinas and his associates. (Id. 11:14-20.) Agent Scariano testified
10 that after the stop was initiated, the agents called for a canine, but did not get a response on the
11 radio. (Id. 13:13-17.) The canine was located at a Border Patrol checkpoint located near the
12 Arizona/California border. (Id. 13:18-14:2.) Agent Scariano testified that was the closest
13 available canine, as the checkpoint was approximately 26 miles from where the vehicle was
14 stopped. (Id. 14:3-5; 18:2-4.) Agent Scariano testified that he was not aware of whether there
15 were canine units on duty at the time at the Calexico and Andrade Ports of Entry, as it was not
16 Border Patrol that worked at the Ports of Entry. (Id. 14:6-9.) In any event, the Ports of Entry
17 were farther away than the nearest Border Patrol checkpoint with a canine. (Id. 14:16-20.)

18       Agent Scariano testified that the agents radioed to the checkpoint several times to
19 request a Border Patrol NDD to sniff the stopped vehicles. (Id. 15:24-16:9.) When no
20 response was received from the checkpoint, one of the agents went to get the canine unit. (Id.
21 15:24-16:23.) Agent Scariano testified that it takes approximately 40 minutes to complete the
22 round trip. (Id. 17:1-15.)

23       When questioned about alternative ways to procure an NDD, Agent Scariano testified
24 that both the Calexico and Andrade Ports of Entry were farther from the location of where the
25 vehicle was stopped and that he did not contact either Port of Entry for an NDD on July 15,
26 2006. (Id. 14:16-20; 31:2-5.) Agent Scariano testified that he had "never known anyone to
27 ever use anything other than a canine Border Patrol dog" when an NDD is needed. (Id. 33:5-
28 13.) This is consistent with Border Patrol procedure to procure an NDD from Border Patrol.

1  (Doc. No. 157 at 4.) The Border Patrol agents do not have direct communications with the
2  Ports of Entry. In order to contact somebody at a Port of Entry, the agents would have to relay
3  through their sector dispatch for them to give the Port of Entry a telephone call. (Id. 29:25-
4  30:7; 31:19-23.) Additionally, the discovery confirmed that on July 15, 2006, after 7 p.m. there
5  was only one NDD and handler at the Calexico East Port of Entry and only one NDD and
6  handler at the Andrade Port of Entry. (Id. at 2-3.)

## Discussion

### I. Reasonableness of Detention

Macias-Encinas challenges the reasonableness of the forty-five minute detention caused by waiting for a canine unit to arrive to conduct a dog sniff of the vehicle. "A seizure is reasonable if: (1) the length of the detention is sufficiently short, and (2) government agents act with diligence in pursuit of their investigation." United States v. $191,910 in U.S. Currency, 16 F.3d 1051, 1059 (9th Cir. 1994) (citing United States v. Place, 462 U.S. 696, 709 (9th Cir. 1983)). The Ninth Circuit noted that the Supreme Court in Place declined to adopt a rigid time limitation for detentions based on reasonable suspicion. The inquiry in determining whether a detention violates the Fourth Amendment "has both an absolute and a context-specific component." Id. "The absolute component prohibits the government from detaining luggage [or whatever item] for too long a period of time, regardless of the police officers' assiduousness in seeking probable cause." Id. "The context-specific component, by contrast, focuses not on the absolute length of the detention (and thus the absolute intrusion on liberty) but on whether law enforcement officers unduly extended the detention by their lack of diligence." Id. at 1059-60.

The Court first turns to the length of the detention. The Ninth Circuit in $191,910 concluded that a two hour detention of luggage in order to submit the bags to a dog sniff test was unreasonable because of the length of the detention. $191,910, 16 F.3d at 1059-60. Obviously as in $191,910, the Court would have a problem with a two hour detention of luggage at an airport, but after significant briefing in this case, the Court concludes that Macias-Encinas's forty-five minute detention in a remote area is different than that at issue in

$191,910. The Ninth Circuit in United States v. Erwin, 803 F.2d 1505 (9th Cir. 1986) concluded that a police officer's forty-five minute seizure of a defendant's luggage in order to inspect it with a drug-sniffing dog was reasonable. Id. at 1509.[2] Based upon this Ninth Circuit case law, the Court concludes that the forty-five minute detention of Macias-Encinas was not unreasonable based upon the length of detention under the absolute component of the inquiry. Therefore, the Court turns to the context-specific inquiry to determine whether the forty-five minute detention in this case was reasonable.

The Court concludes, based upon the totality of circumstances in this case, that the detention was reasonable, as the agents acted diligently and did not unduly extend the detention. The Court accepts the credible testimony of Agent Scariano, who testified that when the agents could not make radio contact with the checkpoint, an agent was dispatched from the stopped vehicles, went to inform the checkpoint that an NDD was needed, and returned with the NDD. Agent Scariano testified that it took approximately 40 minutes to drive the round trip. The defense contends that Macias-Encinas was detained for forty-five minutes before the dog arrived, approximately the same amount of time. (Doc. No. 144, Macias-Encinas Decl. ¶¶26, 27.) The remoteness of the area in which Macias-Encinas and his associates were operating contributed to the length of the detention to obtain the nearest available NDD.

Macias-Encinas argues that the detention was unduly extended because the agents could have either called for a dog while first observing Macias-Encinas and associates in the campground area or contacted the Calexico or Andrade Ports of Entry for a dog. The Ninth Circuit in $191,910 held that, "[w]here drug enforcement agents know that a suspect will be arriving at an airport on a particular flight in a particular time period, they do not act with diligence if they fail to have a drug-sniffing dog at the airport or at the very least to make

---

[2] See also United States v. Mendoza, 468 F.3d 1256, 1259, 1261 (10th Cir. 2006) (forty-minute detention was constitutional when a drug-sniffing dog was initially fifty miles away and officers acted diligently); United States v. Maltais, 403 F.3d 550, 557 (8th Cir. 2005) (90- to 120-minute detention was constitutional when defendant was stopped in a remote location); United States v. Orsolini, 300 F.3d 724, 730 (6th Cir. 2002) (fifty minute detention was constitutional when thirty-five of these minutes elapsed while a drug-sniffing dog was en route).

arrangements for its arrival at the earliest possible time." 16 F.3d at 1061. However, where "government agents . . . have no particular reason to believe that any particular drug suspect will be arriving on an incoming flight," they "need not have a dog sitting continuously at the gate, the luggage area, or the nearby location where the search will be conducted." Id. at 1061. Here, Macias-Encinas and his associates were not on a scheduled flight or operating pursuant to some other set time table, as they were riding off road vehicles in the desert. The agents had no way of knowing how long Macias-Encinas and his associates would be out on the ATVs or which direction they would travel if they left the campground area. Unlike an airport when agents know the arrival time of a suspect, the agents in this case had no ability to predict the actions or departure time of the suspects operating in a remote location in the desert. They also had no duty to have a dog continuously on the scene. The agents in this case need not have called for a dog and had the NDD sitting out in the desert with the agents waiting for some uncertain event when the suspects decided to load the marijuana into the pickup trucks and leave the campground area.

The agents also did not unduly extend the detention by failing to contact either Port of Entry for a dog. Both the Calexico and Andrade Ports of Entry were farther away than the checkpoint. (Doc. No. 144, Ex. B.) Additionally, the Ports of Entry are not operated by Border Patrol and did not have direct radio contact with the agents. (Tr. 29:25-30:7; 31:19-23; 32:21-25.) As Agent Scariano testified, in his four years of experience with the Border Patrol, the only dogs used when an NDD is needed are Border Patrol canines. (Id. 33:5-15.) Matthews, the Border Patrol K-9 supervisor, confirmed that Border Patrol agents are to procure an NDD from Border Patrol first, and any requests that are made for Port of Entry NDDs when Border Patrol dogs are unavailable are done on an informal basis. (Doc. No. 157 at 4.) In any event, there was only one NDD and handler at the Calexico and Andrade Ports of Entry after 7 p.m. on July 15, 2006. (Id. at 2-3.) In hindsight, it is speculative whether Border Patrol agents could have obtained an NDD more promptly from either Port of Entry. Agents in the field do not have direct communications with the Ports of Entry and must relay any message to the Ports of Entry through sector dispatch. (Tr. 29:21-30:7.) Additionally,

1  each Port of Entry had only one NDD working at the time and may have not relinquished it to
2  Border Patrol to conduct a dog sniff thirty miles away.[3]  "A court making [a reasonableness]
3  assessment should take care to consider whether the police are acting in a swiftly developing
4  situation, and in such cases the court should not indulge in unrealistic second-guessing."
5  United States v. Sharpe, 470 U.S. 675, 686 (1985).  After the evidentiary hearing, the Court
6  concludes that the agents acted with diligence and according to protocol in contacting and
7  obtaining the closest Border Patrol NDD to the stopped vehicles.

8  The Court concludes that under the circumstances, the forty-five minute detention was
9  reasonable and the officers were diligent in their investigation.  As a result, the Court denies
10  Macias-Encinas's motion to suppress statements and evidence.

**II.  Standing to Challenge Search**

The United States argues that Defendant Macias-Encinas lacks standing to suppress the evidence obtained from the dog sniff and resulting search of the vehicle, as Macias-Encinas was a passenger and not the owner of the vehicle. The Court concludes that Macias-Encinas has standing to challenge the seizure of his person as a violation of his Fourth Amendment rights and to seek the suppression of evidence that is the fruit of any unreasonable seizure. See Brendlin v. California, 551 U.S. 249, 263 (2007) (holding passenger of vehicle is seized during traffic stop within the meaning of the Fourth Amendment).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

---

[3] The United States has submitted additional affidavits from Whitford and Nagy, Port Directors of the Calexico and Andrade Ports of Entry, stating that they would not have provided their sole NDDs to Border Patrol on July 15, 2006. (Doc. No. 159.)  Defendant objects that these affidavits were submitted untimely. (Doc. No. 160.)  However, because it is Border Patrol policy to use its own dogs first, and the Ports of Entry were farther away, the Court need not reach this issue as the officers diligently pursued their investigation.

## Conclusion

Following an evidentiary hearing and significant briefing, the Court concludes that the officers diligently pursued their investigation and that the forty-five minute detention was reasonable under the circumstances. Therefore, the Court denies Defendant's motion to suppress.

**IT IS SO ORDERED.**

DATED: September 22, 2009

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT